IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:    BLEACHER CREATURES, LLC | CHAPTER 11 |
| Debtor | No. 17-13162-jkf |

**CREDITOR BENJAMIN SHEIN'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF HIS MOTION SEEKING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362**

Creditor Benjamin Shein (hereinafter "Shein"), by and through his counsel, Berger Law Group, P.C., hereby files this Supplemental Brief in Further Support of his Motion for Relief from the Automatic Stay pursuant to 11 U.S.C. § 362 ("Shein's Motion for Relief from Stay").

In this matter, Mr. Shein seeks relief from the automatic stay so that he may pursue his federal securities claims (and potentially common law claims for fraud) against the Debtor's officers and directors pursuant to the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act"). Mr. Shein seeks to hold the officers and directors of Bleacher Creature, LLC (hereinafter, "Debtor" or "Company") responsible for their improper actions, which actions fraudulently induced Mr. Shein to purchase $100,000.00 of shares in the Debtor.

The Debtor's officers and directors made numerous misrepresentations and omissions in the offering materials that were provided to Mr. Shein, and which misrepresentations and omissions induced Mr. Shein to purchase his shares in the Debtor. These misrepresentations and omissions include, *inter alia*: the Company's Disclosure Statements which extolled the numerous licensing agreements that the Company purportedly had with major sports organizations and entertainment companies; the Company's statement that "The Company's success will depend on its ability to

establish licensing relationships with sports and entertainment franchises and relationships with retail partners as part of its marketing strategy"; the Letter to Investors from the Company's officer and director, Matthew Hoffman which stated the following regarding the licensing: "I saw a great market opportunity…we have been able to expand beyond sports with partnerships with Marvel and DC…"; and the Debtor's failure to disclose any timely information regarding the negative and costly issues it was experiencing with the kiosk program and with its licensing program.

However, despite these assurances that the Company's existing licenses and newly signed licenses would lead to greater profits and success for the Company, the Company filed for chapter 11 bankruptcy protection on May 2, 2017, only two years after its private offering. In its Bankruptcy Disclosure Statement, the Company states that it was forced to file bankruptcy due, in part, to "the terms of certain of the Debtor's licenses, which required the Debtor to make minimum guaranteed payments to certain licensors, irrespective of actual sales of the licensed product. At the same time, certain of the Debtor's licensors prohibited the Debtor from selling their licensed products on Amazon.com, which had historically proven to be a lucrative sales platform for the Debtor."

Additionally, the Company stated that "beginning in 2014, the Debtor attempted to expand its direct-to-consumer sales through the use of mall kiosks. This strategy did not result in the sales volumes the Debtor had expected, while at the same time burdening the Debtor with additional expenses."

The guaranteed minimum payment requirements due to the license holders was never disclosed to Mr. Shein in the private offering. Rather, the offering materials provided to Mr. Shein made it appear that obtaining greater licensing deals would lead to positive earnings for the Company, not drive it to its downfall. Moreover, there was no mention in the offering documents

that the kiosk program initiated in the prior year had low sales volume and was causing burdensome expenses to the Company. Further, there was no mention in any of the offering documents that there were license prohibitions which now prevented the Company from selling its licensed products on Amazon.com, which was formerly a lucrative sales platform for the Company. All of these misrepresentations and omissions were material, and all of these issues significantly impacted the Company's financial condition.

Based on the foregoing, Mr. Shein asserts that the Company and its President, Matthew Hoffman, made false and misleading statements regarding the Company's financial condition in the offering documents, and to Mr. Shein directly when he met with Mr. Hoffman prior to Mr. Shein making his investment in the Company. Said misrepresentations form the basis for liability under the federal securities laws, including the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act"). Mr. Shein seeks to pursue appropriate recourse against the Company's officers/directors for their false and fraudulent statements related to the offering under section 10(b) and 20(a) of the Exchange Act, as well as under Section 12(2) of the Securities Act of 1933, 15 U.S.C.S. § 77l(2).

The Debtor's only argument against Mr. Shein's allegations at this time is that Mr. Shein's claims are somehow derivative claims that can only be brought by the bankruptcy estate. However, the Debtor's argument is not supported by any relevant case law, and Debtor's argument runs contrary to both the law of the State of Delaware[1], and to the applicable federal law relating to these federal securities statutes. According to the applicable law as set forth below, Mr. Shein's claims are direct claims.

---

[1] The jurisdiction of incorporation/organization of Bleacher Creature, LLC is Delaware. See State of Delaware Certificate of Formation with the company's Delaware registered office address, attached hereto and made a part

As Mr. Shein clearly has a direct cause of action against the Debtor's officers and directors, as Mr. Shein will be severely prejudiced if the court does not allow him to proceed with his legal actions to pursue his direct rights and claims, and as the Debtor will not be prejudiced if the stay is lifted, the Court should grant Mr. Shein's Motion for Relief of Stay.

A.    **Case Law Cited By Debtor Is Not Applicable**

As an initial matter, in the Debtor's Supplemental Objection to Mr. Shein's Motion for Relief from Stay ("Debtor's Supplemental Objection"), the Debtor's argument that Mr. Shein's claims must be brought derivatively is based upon a Pennsylvania court's interpretation of Oklahoma state law. However, Debtor's application of Oklahoma state law (and Pennsylvania's interpretation of Oklahoma law) is simply not applicable! In determining whether the claims are properly brought as derivative or direct, the court looks to the law of the state in which the company is incorporated. See Kamen v. Kemper Fin. Servs., Inc., 500 Ul.S. 90, 108-09, 111 S. Ct. 1711, 114 L. Ed. 2d 152 (1991). Accordingly, as Bleacher Creature, LLC was incorporated in Delaware, it is Delaware law (not Oklahoma law) that applies to whether Mr. Shein maintains a derivative or direct action against the Company.

Debtor next asserts that Mr. Shein only has a derivative action based on a Pennsylvania court's interpretation of New Jersey partnership law. Debtor's reliance on New Jersey partnership law is similarly faulty, as New Jersey partnership law does not apply to this Delaware corporate entity, nor to Mr. Shein's purchase of corporate stock shares in this Delaware corporation.

1. **Delaware Law, Not Oklahoma Law Applies**

Debtor first cites to *In re SemCrude,* 796 F.3d 310 (3d Cir. 2015), as Debtor's alleged basis

---

hereof as exhibit "A".

that Mr. Shein's claim that he was fraudulently induced into purchasing $100,00.00 of Debtor's corporate shares should be deemed a derivative claim. However, the *In re SemCrude* court's opinion is based entirely on its interpretation of Oklahoma law, and the parties in that action acknowledged that Oklahoma law was the controlling state law. *Id.* at P. 316. However, as *In re SemCrude* clearly states, "Whether a claim is derivative or direct is a question of (state) law". *Id*. As the Company was incorporated in Delaware, it is Delaware law (as reviewed below) that must be used to determine whether Mr. Stein's claims are derivative or direct.

Further, as Mr. Shein plans to bring claims under the federal securities laws, including the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act"), federal law also applies to this question. *See In re Smith Barney Transfer Agent Litig.*, 765 F. Supp. 2d 391, 397 (S.D.N.Y. 2011) (citing cases) (stating that courts generally look to federal law to evaluate standing questions under § 10(b) of the Exchange Act).[2]

Under Delaware state law, the distinction between direct and derivative claims "must turn solely on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004).

Under Delaware law "…the court must look to all the facts of the complaint and determine

---

2 However, as the law relating to the derivative/direct issue under both federal law (reviewing the Federal Securities Act and the Federal Exchange Act), and Delaware state law is substantially similar, the result will be the same applying either law. Whereas federal law asks "whether a plaintiff suffered an individual injury distinct from the injury to the corporation," *see id.* at 398 (quotation marks omitted), Delaware law states that the distinction between direct and derivative claims "must turn solely on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004). Thus, as the volume of precedential law is more robust in Delaware, this memorandum will primarily focus on the law of Delaware (the Debtor's state of incorporation) and will cite any differences with federal

for itself whether a direct claim exists." *Dieterich v. Harrer*, 857 A.2d 1017, 1027 (Del. Ch. 2004).

If Mr. Shein merely alleged that it was the Debtor's officers and directors who mismanaged the company which caused it to lose money and thereby damaged Mr. Shein, Mr. Shein would have asserted only a derivative claim. *See id.* However, in this matter, Mr. Shein alleges that the Debtor's officers and directors made material misrepresentations and omissions to fraudulently induce Mr. Shein to purchase shares in the Debtor, thus Mr. Shein has properly set forth a separate and individual injury.

Fraudulent inducement is a separate and individual injury, and therefore permits a plaintiff to state a direct claim. *See, e.g., Albert v. Alex. Brown Mgmt. Serv., Inc.*, Nos. Civ. A. 762-N, Civ. A 763-N, 2005 Del. Ch. LEXIS 133, 2005 WL 2130607, at *12 (Del. Ch. Aug. 26, 2005) ("Generally, non-disclosure claims are direct claims."); *Stephenson v. Citco Grp. Ltd.*, 700 F. Supp. 2d 599, 610-24 (S.D.N.Y. 2010) (finding that fraudulent inducement claims against an auditor are direct claims under Delaware law); *see also, In re Smith Barney Transfer Agent Litig.*, 765 F. Supp. 2d at 399 (applying federal law, the court found that plaintiffs' had asserted a direct claim that misrepresentations had induced their investment); *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 401 (S.D.N.Y. 2010) ("[A]llegations by investors of having been tortuously induced to invest or to retain an investment are not derivative claims.").

Accordingly, under both Delaware law and federal law, fraudulent inducement claims are direct because they allege a harm suffered by a shareholder independent of the corporation. *See Albert*, 2005 Del. Ch. LEXIS 133, 2005 WL 2130607, at *12 (finding that the company was not harmed by the alleged disclosure violations, and that any harm was to the unitholders individually

---

law, as appropriate.

who either lost their opportunity to request a withdrawal from the funds from the managers, or to bring suit to force the managers to redeem their interests); *see also Stephenson v. Citco Grp. Ltd.*, 700 F. Supp. 2d at 612 (finding that the plaintiff's claims based on theories of negligent and fraudulent inducement were direct to the extent that they alleged (1) violation of a duty owed to potential investors at large and (2) that such violations induced plaintiff to invest in the company's funds); *see also In re Smith Barney Transfer Agent Litig.*, 765 F. Supp. 2d at 399 [§ 10(b) claims are not derivative claims as Defendants' misrepresentations were directed primarily at investors in the fund]. Mr. Shein's loss of $100,000.00 to purchase the corporate shares was due to the Debtor's officer's and director's fraudulent inducement, misrepresentations and omissions, and accordingly, Mr. Shein maintains a direct claim.

Further, proceeding with his direct federal securities and fraudulent inducement action does not necessarily benefit Mr. Shein unfairly at the expense of others, because the shareholders who were fraudulently induced to invest in a corporation, are not similarly situated to shareholders who did not rely on misrepresentations or omissions. *See, Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008). Not all of the Debtor's shareholders relied on the specific private share offering materials presented to Mr. Shein. Some investors bought at earlier times, some at later times, and those investors received different Offering Materials. Also, Matthew Hoffman, a shareholder who is both an officer and director of the Debtor, clearly did not rely on said private offering materials which Mr. Hoffman helped prepare and circulate. Thus, as Mr. Shein received different offering materials, and as Mr. Shein was induced to purchase his shares from a non-similarly situated shareholder (who was also an officer and director of the Company), Mr. Shein maintains a direct claim. *See, id.*

Under Delaware law, fraudulent inducement claims "are direct to the extent (and only to the

extent) that they allege (1) violation of a duty owed to potential investors at large and (2) that such violations induced plaintiff to invest in [the corporation]." *Stephenson v. Citco Grp. Ltd.*, 700 F. Supp. 2d at 612. That situation is clearly the case here, and Mr. Shein should be permitted to pursue in his proposed securities law case against the Debtor, its officers and directors.

2. <u>New Jersey Limited Partnership Act of 1976 Has No Applicability To This Matter</u>

Next, the Debtor's reliance on *United States SBA v. Propper,* 2004 U.S. Dist. LEXIS 23363 (E.D. Pa. 2004), is equally misplaced. The Debtor's allegations that the claims in *Propper* were "almost identical to the ones that Mr. Shein seeks to assert" is simply not the case. Rather, *Propper* is a Pennsylvania federal court matter, which interpreted New Jersey law, and was decided under the prism of the <u>New Jersey Uniform Limited Partnership Act of 1976</u>. The Propper case related to a partnership in which each investor in the partnership received the same materials. None of these facts in *Propper* are applicable to the instant matter, let alone being "almost identical to the ones that Mr. Shein seeks to assert". *Propper,* 2004 U.S. Dist. LEXIS 23363 at *15 (finding that "When limited partners sue the limited partnership or its general partners derivatively they are, in essence, standing in the shoes of the partnership to vindicate its rights" and "it is the partnership's rights, not the limited partner's, that the lawsuit seeks to vindicate.").

First, the New Jersey Uniform Limited Partnership Act of 1976 has no applicability whatsoever to a Delaware corporation. Second, Mr. Shein is certainly not a limited partner suing a limited partner or its general partners in this matter. Third, each investor in the Company did not receive the same materials. Mr. Shein relied on the written materials and omissions made by the Debtor's officers and directors, whereas Matthew Hoffman certainly did not rely on the written materials he helped to prepare and distribute, and Mr. Hoffman was certainly aware of the relevant

facts causing the Company financial duress, but which relevant facts Mr. Hoffman failed to provide to Mr. Shein.

3. <u>Federal Law Further Supports Mr. Shein's Direct Injury Claim</u>

Under federal law, the result is the same. Specifically, the Court in one of the seminal cases on the matter, *In re Smith Barney Transfer Agent Litig.*, 765 F. Supp. 2d 391, 397-99 (S.D.N.Y. 2011), found that if plaintiffs claim that they were fraudulently induced to purchase shares in the defendant based on material misrepresentations in the offering materials, those plaintiffs can be said to have suffered a direct injury. *Id.* citing *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 2010 WL 3341636, at *15 (S.D.N.Y. 2010) ("[A]llegations by investors of having been tortuously induced to invest or to retain an investment are not derivative claims.").

Furthermore, the *Smith Barney* court found that if the court were to determine that the Plaintiffs § 10(b) claims are only derivative claims, it would improperly overlook the fact that defendants' misrepresentations were directed primarily to the investors in the defendants' funds. *Smith Barney*, 765 F. Supp. 2d at 397. The Smith Barney court found that regardless of whether the plaintiffs sought losses similar to those recoverable by the company in a derivative action, it did not deprive plaintiffs of direct standing—direct and derivative actions based on the same underlying conduct are not mutually exclusive. *Id.* citing *Ceribelli v. Elghanayan*, 990 F.2d 62, 64 (2d Cir. 1993) (noting the possibility of both claims in the RICO context); *Katz v. Pels*, 774 F. Supp. 121, 127 (S.D.N.Y. 1991) (same as to § 10(b) claims).

Accordingly, based on an analysis of the matter using the proper Delaware case law, and also reviewing applicable federal securities case law, and rejecting Debtor's cited Oklahoma law and Debtor's cited New Jersey partnership statute which are simply not applicable to this matter, it is

abundantly apparent that Mr. Shein maintains a direct cause of action for fraudulent inducement and for securities law violations against the Debtor and its officers and directors.

**B.     Mr. Shein Will Be Severely Prejudiced If He Is Not Granted Relief From Stay**

Further, as there is significant cause to grant Mr. Shein's Motion for Relief from Stay, the Court's failure to do so would prejudice Mr. Shein greatly. If the Court does not grant Mr. Shein relief from stay to pursue his fraudulent inducement and federal securities law claims against the Debtor's officers and directors, the Court will essentially be completely cutting off Mr. Shein from seeking justice due to the officers' and directors' clear violations and improper actions. The total blocking of justice simply cannot be the desire, nor the intention of this Court.

Moreover, it is not clear how granting relief from stay could ever prejudice the Debtor as Mr. Shein has made it quite clear he will not seek any execution against the Debtor's assets if/when he is awarded judgment. Rather, Mr. Shein seeks to name the Debtor only as a necessary party in his direct action.

**C.     The Company Has Director and Officer Liability Insurance That Should Ensure That It Will Not Be Damaged Or Prejudiced**

Finally, the Debtor may not be prejudiced or damaged in any way if Mr. Shein is permitted to bring a securities action against the Company's officers and directors, as the Company has notified Mr. Shein that it maintains director and officer insurance, although a copy of the insurance policy was not provided to Mr. Shein. One would certainly hope that the Company's director and officers have put their insurance carrier on notice of Mr. Shein's claims. Otherwise, said directors and officers may end up with no coverage due to their own actions.

As the Debtor has purchased said director and officer insurance, then any damages found against the Company, or its officers and/or directors should be covered by such a policy. Also, the

defense of the litigation brought against the directors and officers should also be covered by the insurance company. Moreover, any indemnification for losses or costs should also be covered by the policy.

While Mr. Shein is currently unaware of the exact type of director and officer insurance which was purchased by the Debtor (be it side-A, side-B or side-C), Mr. Shein must be permitted to pursue his federal securities action against the Company's officers and directors, and those officers and directors may then pursue the appropriate actions against their insurance company.

Accordingly, as the Debtor's director and officer insurance policy should prevent the Company from suffering any loss for indemnification, should reimburse the officers and directors, and should cover litigation costs, the Debtor should not be prejudiced in any manner by allowing Mr. Shein to bring his proper direct federal securities action. Therefore, Mr. Shein's Motion for Relief from Stay must be granted.

## CONCLUSION

Mr. Shein has shown that he suffered a direct injury, that there is no prejudice to the Debtor if the motion for relief from is granted, and that Mr. Shein will be severely prejudiced if he is not permitted to bring his direct federal securities law action. Mr. Shein should be granted relief from the automatic stay to exercise and enforce all of his rights and remedies against the Company, as a necessary party, and against the officers and directors of the Debtor for their fraudulent inducement which caused Mr. Shein to invest $100,000.00 in the Company which was suffering financial hardship, and for their securities law violations.

BERGER LAW GROUP, P.C.

Dated: June 26, 2018      By:   /s/: Phillip D. Berger, Esq.
                                PHILLIP D. BERGER, ESQUIRE
                                *Attorneys for Creditor Benjamin Shein*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:    BLEACHER CREATURES, LLC | CHAPTER 11 |
| Debtor | No. 17-13162-jkf |

## CERTIFICATE OF SERVICE

I, Phillip D. Berger, Esquire, do hereby certify that on June 26, 2018, I caused a true and correct copy of the foregoing to be filed electronically.

Notice of this filing will be sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

BERGER LAW GROUP, P.C.

Dated: June 26, 2018        By:    /s/: Phillip D. Berger, Esq.
PHILLIP D. BERGER, ESQUIRE
919 Conestoga Road
Building 3, Suite 114
Rosemont, PA 19010
*Attorneys for Creditor Benjamin Shein*

**EXHIBIT A**

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 04:02 PM 11/08/2010*
*FILED 04:02 PM 11/08/2010*
*SRV 101067665 - 4895859 FILE*

# CERTIFICATE OF FORMATION

## OF

## Bleacher Creatures LLC

1. The name of the limited liability company is Bleacher Creatures LLC.

2. The address of its registered office in the State of Delaware is: Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, Delaware 19801. The name of its registered agent at such address is The Corporation Trust Company.

IN WITNESS WHEREOF, the undersigned have executed this Certificate of Formation of Bleacher Creatures LLC this 8th day of November, 2010.

_____
Matthew Hoffman, Authorized Person

DE083 - 2/20/07 CT System Online